(86 N. W. Rep. 114.)

---

## DANIEL PATTERSON *vs.* A. L. PLUMMER.

Opinion filed May 2, 1901.

### Sales—Failure to Deliver—Damages.

The measure of damages recoverable for a breach of an agreement to deliver personal property, where the contract price has not been paid, is fixed by section 4985, Rev. Codes, at the excess, if any, of the value of the property to the buyer, over the amount due on the purchase price.

### Presumptive Value—Price at Which Could be Replaced.

Section 5010, Rev. Codes, which provides that the value of property to a buyer is deemed to be the price at which an equivalent thing could within a reasonable time thereafter be bought in the nearest market, is inapplicable as a means of estimating the value of property which in itself, or through an equivalent, has no market value.

### Value of Bank Stock—Burden of Proof.

Section 5012, Rev. Codes, which provides that the value of a written instrument is presumed to be that of the property to which it entitles the owner, so far as it is applicable to certificates of stock in a national bank, fixes the presumptive value of such stock at its par or nominal value, and the evidence to show a greater value is upon the person asserting it.

### Report of Bank Officers to Comptroller—No Evidence of Value of Stock.

The written report of the officers of a national bank to the comptroller of the currency, made pursuant to section 5211. Rev. St. U. S., does not purport to give the actual or estimated value of the bank's property, and is incompetent, alone, as a basis from which to deduce the actual value of the bank's stock.

### Verdict Properly Directed.

It is *held* in this case that a verdict was properly directed for defendant on the ground that no damages had been proved; further, that error was not committed in excluding evidence.

Appeal from District Court, Traill County; *Pollock,* J.

Action by Daniel Patterson against A. L. Plummer. Judgment for defendant, and plaintiff appeals.

Affirmed.

*W. E. Purcell and P. G. Swenson,* for appellant.

Plummer offered and agreed to sell three hundred and fifty-three shares of stock to Patterson at one hundred and thirty-five dollars per share. Patterson gave him a check for the amount. Plummer could not read it without his glasses and Patterson read the check to Plummer, told him it was in payment of three hundred fifty-three shares of stock, and asked Plummer to transfer the stock to him. Plummer made no objection to the check. These facts must be considered in connection with the surrounding circumstances. *Blood* v. *Fargo Elev. Co.,* 1 S. D. 71; *Pearson* v. *Post,* 2 Dak. 220; *Miller* v. *May,* 5 S. D. 468. There is no denial in the answer of the facts in the complaint, wherein it is alleged that Plummer offered and agreed to sell three hundred fifty-three shares of stock. The number of the shares is therefore admitted by the answer. The plaintiff is entitled to an explicit denial of every material allegation of the complaint or to an admission of its truth, either by direct statement or by silence. 2 Estee's Pl. 3171; *Brown* v. *Scott,* 25 Cal. 189; *Racouillat* v. *Rene,* 32 Cal. 450; *Gay* v. *Winter,* 34 Cal. 153. The failure to deny a material averment is an admission of the facts contained in such averment. 2 Estee's Pl. 3172; *Burke* v. *Company,* 12 Cal. 408; *Blankman* v. *Vallejo,* 15 Cal. 638; *Patterson* v. *Ely,* 19 Cal. 18. Defendant having admitted the agreement in his answer, is precluded from afterwards contesting the fact that the agreement was made. *Howard* v. *Throckmorton,* 48 Cal. 482; *Spangel* v. *Reay,* 47 Cal. 608; *Nation* v. *Cameron,* 2 Dak. 347. Patterson's letter, his testimony and tender of the check were sufficient offer and acceptance to make a binding contract. *Olson*

v. *Sharpless,* 55 N. W. Rep. 125; *Mauring* v. *Lyon,* 72 N. W. Rep. 72; *Hurley* v. *Brown,* 98 Mass. 545; *Meade* v. *Parker,* 115 Mass. 413; *New England Etc.,* v. *Stanford,* 165 Mass. 328; *Tice* v. *Freeman,* 15 N. W. Rep. 674; *Singleton* v. *Hill,* 91 Wis. 51. Patterson's oral acceptance of this written offer was sufficient. Brown on Statute of Frauds, 345. The tender of the check was sufficient, no objection being made to it. § 3815, Rev. Codes; 25 Enc. L. 908 & note; 916 & note; *McGrath* v. *Greneger,* 39 At. Rep. 415; *Walsh* v. *Association,* 14 S. W. Rep. 722; *Gradle* v. *Warner,* 140 Ill. 123; *Henderson* v. *Cass County,* 107. Mo. 50. The value of choses in action is presumed to be the amount apparently due upon them. *Anderson* v. *Bank,* 6 N. D. 497. Plaintiff's damage is fixed by statute. § § 4985, 5012, Rev. Codes. The Court erred in directing a verdict. *Carson* v. *Gillette,* 2 N. D. 255.

*John Carmody,* for respondent.

The offer of Plummer to sell his stock to Patterson at most was an alternative one, an offer to buy or to sell. Patterson would have to accept either proposition within a reasonable time and let Plummer know which of the offers he accepted. This he did not do, hence the minds of the parties never met. *Graff* v. *Buchanan,* 48 N. W. Rep. 915; *Talbot* v. *Pettigrew,* 13 N. W. Rep. 576; *Lincoln* v. *Guy,* 164 Mass. 573, 42 N. E. Rep. 95; *Hough* v. *Brown,* 19 N. Y. 111; *Frazer* v. *Small,* 13 N. Y. Supp. 468; *Thompson* v. *Will,* 3 N. Y. Supp. 931. Plaintiff introduced evidence on the trial tending to prove the allegation he now alleges that defendant admitted in his answer. He cannot raise this point for the first time in the Supreme Court. *Racouillat* v. *Rene,* 22 Cal. 450. It is immaterial upon what ground the trial court directed a verdict in favor of the defendant. If the defendant on the whole record was entitled to a directed verdict, it must stand. *Hillsboro Nat'l Bank* v. *Hyde,* 7 N. D. 400, 75 N. W. Rep. 781; *Paulson* v. *Nichols & Sheppard Co.,* 8 N. D. 606, 80 N. W. Rep. 765; *Miller* v. *Oakwood, Twp.,* 84 N. W. Rep. 556.

YOUNG, J. Plaintiff seeks to recover damages from the defendant for the breach of an alleged contract by the latter to sell and transfer to him 353 shares of the capital stock of the Hillsboro National Bank, at an agreed price of $135 per share. It is alleged in the complaint that said shares were in fact of the value of $165 each. Damages are alleged in the sum $10,590, which is the excess of the alleged actual value of said 353 shares over the price agreed upon in the alleged contract. The defense interposed is twofold: First, that there was in fact no contract to sell; second, that, even if there was plaintiff sustained no damage. At the close of plaintiff's testimony, counsel for defendant moved the Court for a directed verdict. This motion was granted, and the jury, pursuant to the Court's direction, returned a verdict for defendant. Judg-

ment was thereafter entered dismissing the action and for costs. Within the statutory period, plaintiff caused a statement of case to be settled, embracing all of the evidence introduced at the trial, and a specification of the errors which he relies upon in his appeal from the judgment.

The direction of the verdict for defendant is assigned as error. It is urged "that, upon all the evidence in the case, it should have been submitted to the jury." The record discloses that the trial court in granting the motion relied upon two of the several grounds upon which the motion was made. These were: First, failure to prove the existence of a contract to sell; second, no damages shown. In reviewing this assignment, we find it unnecessary to consider the first ground referred to, namely, the question as to the existence of the contract, for the reason that an examination of the evidence has led us to the conclusion that the order of the trial judge in directing the verdict of which complaint is made was entirely proper upon the second ground before referred to, which is that plaintiff failed to prove damages. The existence or nature of the contract need not, therefore, be discussed; for it is conceded that a recovery, in any event, could not be sustained in the absence of proof of damages. Plaintiff's contention is that he established the damages alleged in his complaint by competent evidence, and that the direction of a verdict for defendant was therefore erroneous. The merit of this appeal turns upon this contention. Is there any competent evidence of damages? The measure of damages recoverable for the breach of a contract such as that we are now considering is provided by § 4985, Rev. Codes, which reads: "The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller under the contract, if it had been fulfilled." In the case at bar, defendant agree to pay $135 per share for 353 shares, or the total sum of $47,655. The measure of recovery, then, is the excess of value, if any, of said stock above the purchase price, no part of which has been paid. There is no controversy as to the foregoing being the correct measure of damages applicable to this case. That is conceded by counsel for both parties. The real question in the case, and upon which it hinges, is as to the proper method of proving the value of the stock. How is the value of the stock to the buyer to be proved? On this counsel disagree. Counsel for defendant urges that the value of the stock in question could only be proved by evidence of the market value of the stock of this bank at the time of the breach of the alleged contract to transfer, or by the market value of shares in some other bank, and in support of this view relies upon § 5010, Rev. Codes, which provides that, "in estimating damages, except as provided by § § 5011 and 5012 [which have no application here], the value of property to a buyer or owner thereof deprived of its possession is deemed to be the price at

which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession and at such time after the breach of duty upon which his right to damages is founded as would suffice with reasonable diligence for him to make such purchase." The rule thus provided is just and equitable, in that it gives to the buyer the benefit of his bargain, and as to such property as has a market value it is controlling; but a cursory examination of the section will show that it has no application to property which is without a market value, and that is this case. The evidence does not disclose a single sale of the stock of this bank at any time. Its stock was not on the market. The defendant owned 353 of the 500 shares of the capital stock, and the plaintiff owned a large portion of the remaining shares. It was not only not on the market, but there were not even private sales made. It is idle, therefore, to refer to market value as a necessary method of estimating the actual value of this stock. It had no market value. And it is equally idle to assert that, in the absence of a market value for this particular stock, plaintiff must show the market value of its equivalent, namely, the value of stock of other banks. There can be no equivalent intrinsically, and none in fact, unless it be of the same value; and that begs the question. The section relied upon refers to property which in itself or through an equivalent has a market value, such as cereals, produce, and such stocks and bonds as are the subject of daily sales in the open market. Furthermore, proof of market value is merely one way of proving actual value. And the rule making market value proof of actual value applies only when an article or its equivalent has a market value. Counsel for respondent cite *Bullard* v. *Stone,* (Cal.) 8 Pac. 17, in support of their contention that market value of the stock in question must be shown under the section last quoted, which is identical in language with the statute which the California Court had under consideration. The case is not in point. The property involved was wheat, which had a market value, and it plainly came under the measure laid down by the statute. No cases have been, or, in the nature of things, can be, found, holding that the rule relied upon is applicable to property which has no market value.

What, then, is the rule for ascertaining the value of stock which is shown to have no market value? Counsel for appellant urge that it is ascertained by proving what they call its "book value," and it is wholly upon certain evidence as to the so-called book value, to which we will now refer, that the contention is based that damages have been proved. No other evidence was offered as to the value of the stock. Plaintiff called the cashier of the bank—one J. E. Larsham—as a witness on his behalf. This witness identified an original written report made by him as cashier, and verified by his oath, and attested by three directors, to the comptroller of the currency pursuant to § 5211, Rev. St. U. S., which report purported to show in detail the financial condition of the bank, as provided by said section, as of date December 2, 1899, which was approxim-

ately the date of the contract in question. This document, which is known in the record as "Exhibit 6," was placed in evidence over the objection that it was incompetent, and not the proper method of proving the value of the stock. Plaintiff's theory as to the proper method of proving damages is made clear by the language of counsel in offering the exhibit referred to, which we now quote: "Exhibit 6 is offered in evidence for the purpose of showing the value of the stock of the Hillsboro National Bank on the 2nd day of December, 1899, in connection with the testimony of Mr. Larsham." The testimony of Larsham related to the making of the report, and to some extent, as explanatory of its contents. He did not—neither did any other witness—testify as to the actual value either of the stock or of the assets of the bank. This witness and others called by plaintiff deduced from the figures contained in said report what is termed the "book value" of the stock. This was obtained by adding together the capital stock, the surplus, and undivided profits, as shown by said report, and dividing the total by 500, the total number of shares of stock of the bank. There is no dispute that on this basis, if it is a competent method of ascertaining the value, the stock was in fact of the actual value of $164 per share, as alleged by plaintiff. The claim that this report is competent evidence to establish the value of the bank stock on the date of the alleged contract is necessarily based upon two propositions: First, that the report itself proves the value of the property owned by the bank; second that each shareholder in said bank was entitled to one five-hundredth part of such property, or its value, for each share owned. Counsel's contention is that "under the provisions of § 5012, Rev. Codes, each share of bank stock of this bank is entitled to one five-hundredth part of all the property of the bank. That, at the book value, amounts to one hundred sixty-four dollars a share." It is apparent that, if either of these propositions are not sustained, this theory of proving value which we are considering must fall. And it matters not which position is erroneous. The result is the same. If there is no evidence as to the property owned by this banking corporation, or evidence of the value of such property, it matters not that each share is entitled to its proportion, no value of the property having been shown. Counsel for appellant rely upon § 5012, Rev. Codes. This section is as follows: "For the purpose of estimating damages the value of an instrument in writing is presumed to be equal to that of the property to which it entitles the owner." It is urged that under this section the stock in question is presumed to have had a value equal to the so-called book value. This contention cannot be sustained. In the first place, the proposition that a holder of stock in a national bank is absolutely entitled to any of the property of the corporation is not correct. It is true, a stock certificate gives to the owner a right to participate to some extent in the affairs of the corporation; to receive dividends, if there are any; and to share in the ultimate distribution of the property after the obligations of the corporation are discharged. Coupled

with it, also, is the liability to assessments. It would be more appropriate to say that the certificate entitled the owner to the rights of a stockholder, rather than to specific money or chattels belonging to the corporation. The section referred to is a common one. So far as we have ascertained, it has been applied only to instruments which upon their face entitle the holder to specific sums of money or specific property, such as promissory notes, drafts, warrants, and mortgage debts. See *Survey* v. *Wells, Fargo & Co.,* 5 Cal. 124; *Fogarty* v. *Finley,* 10 Cal. 239, 70 Am. Dec. 714; *Zeigler* v. *Wells, Fargo & Co.,* 23 Cal. 179, 83 Am. Dec. 87; *Holt* v. *Van Eps,* (Dak.) 46 N. W. 689; *Cosand* v. *Bunker,* (S. D.) 50 N. W. 84; *Grigsby* v. *Day,* (S. D.) 70 N. W. 881. But even if the section is applicable to certificates of bank stock, it does not aid plaintiff's contention. As we have seen, it entitles the holder only to a shareholder's right, and to no specific property owned by the corporation. What is the presumptive value of the right represented by a share of stock in a national bank, if the statute is applicable? Clearly, it is the par value of the stock, of $100. That represents the original investment, and is the face or par value of the shares into which the capital stock is divided. The rule as laid down by the authorities is that where a presumption as to the value of stock is permitted, it is that it is worth par, and the burden is on the party who wishes to establish a different value to do so by competent evidence. See Appeal of Harris (Pa.) 12 Atl. 743; *Vail* v. *Reynolds,* 118 N. Y. 297, 23 N. E. 301. In 2 Suth. Dam. 390, the author says: "Stocks, like promissory notes, have a nominal value, expressed in dollars or pounds sterling; and, as we have seen, on a breach of a contract for the delivery or transfer of stock, recovery is based on the market value, if it has such. In the absence of that evidence of value, other circumstances must be resorted to, and its nominal value will perhaps be accepted where there is no proof." The nominal or par value of the stock in question was $35 per share less than the plaintiff agreed to pay for it. What evidence has been offered to show that it had an actual value greater than its par value? None whatever. No testimony was introduced to show the actual value of the stock, and no evidence as to the actual value of the corporation. The report of the cashier to the comptroller is not evidence of the value either of the property or the stock. It does not purport to give an estimate of the value of either. It is apparent that it was not within the scope or purpose of the report to declare upon the actual values of the various items of property owned by the corporation, and it does not do so. It is also apparent that the sum deduced from such reports as book value are purely arbitrary, and have no reference to actual value. This can be seen at once by considering that the actual value of the stock would necessarily rise or fall with changes in the actual value of the property of the corporation, but the book value would not change. It would remain fixed and entirely unresponsive to conditions rendering the assets of the bank highly valuable or entirely worthless. Not only does the report itself show

that it does not furnish a standard for measuring actual value, but it also appears in the testimony of plaintiff's witnesses that the so-called book value does not represent actual value. Neither have any authorities been presented sustaining appellant's views as to the probative value of the report. It is true, the report does not contain an estimate of the value of certain real estate, but this is but a small fraction of the bank's assets. Whether the report was admissible for any purpose, we need not discuss or determine. It is sufficient to say that it did not furnish evidence of the value of the assets, or data from which the actual value of the stock could be deduced.

W. L. Carter, a witness for plaintiff was asked this question: "Q. Will you please state to the jury how you determine the value of bank stock?" An objection to the question was sustained, and this is assigned as error. It is urged that it was the jury's duty to determine the value of the stock, and that it was highly desirable that they should have a rule to govern them. This is true, but the rule called for was one of law, belonging to the province of the court, and not of fact, to emanate from witnesses. The objection was properly sustained.

Neither was it error to sustain the objection to the further questions propounded to this same witness wherein he was asked to give his estimate of the value of the stock in controversy, basing his estimate upon the cashier's report before referred to, and his general knowledge of the reputation of the managers of the bank. As we have seen, this report afforded no basis for determining the actual value of either the assets of the bank or its stock.

It may be asked whether a recovery can be had at all when the stock has no market value, and, if so, how the value is to be shown. As to this there is no doubt. In 2 Cook, Corp. § 581, the author correctly states the rule as follows: "The fact that the shares of stock have no known market value will not prevent recovery where the actual value is ascertainable in an action to recover damages. The value may be shown by showing the value of the property and business of the corporation." See case cited in note. In 2 Suth. Dam. 378, a more general rule is stated, as follows: "If the article in question has no market value, its value may be shown by proof of such elements or facts affecting the question as exist. Recourse may be had to the items of the cost, and its utility and use. And opinions of witnesses properly informed on the subject may also be given in respect of its value." It appears that plaintiff pursued none of the methods referred to, but relied entirely upon the report of the cashier, which, as we have seen, afforded no proof of value whatever. The verdict was therefore properly directed.

Other errors are assigned, but inasmuch as plaintiff must fail in any event, by reason of failure to prove damages, such errors become unimportant, and will not, therefore, be further referred to. Judgment affirmed. All concur.