(82 Misc. Rep. 180.)

KOELLHOFFER v. PETERSEN et al.

(Supreme Court, Special Term, Kings County.   September 17, 1913.)

1. CREDITORS' SUIT (§ 1*)—NATURE OF REMEDY.
    The action authorized by Code Civ. Proc. § 1871, by a judgment creditor whose execution has been returned unsatisfied, to compel the discovery of property belonging to the judgment debtor, and of any money, thing in action, or other property due him or held in trust for him, is virtually the same as the creditor's bill for the discovery of assets under the old chancery practice.
    [Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

2. CREDITORS' SUIT (§ 42*)—PLEADING—SCOPE OF RELIEF OBTAINABLE.
    Under Code Civ. Proc. § 1871, authorizing a judgment creditor's action to compel the discovery of property of the judgment debtor or of any money or other property due him or held in trust for him, and section 1873 providing for the satisfaction of the sum due the creditor out of any money or other personal property discovered in such action, while a judgment creditor may maintain an action for a discovery, and in that action reach property of the debtor not specifically set forth in the complaint, where a complaint to set aside fraudulent transfers specified and for a discovery of property of the debtor or held in trust for him not only failed to allege the existence of any property other than that specified but affirmatively alleged that the debtor had no other property out of which a satisfaction of the judgment could be obtained, no transfers except those specifically mentioned could be set aside.
    [Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 175–177; Dec. Dig. § 42.*]

3. FRAUDULENT CONVEYANCES (§ 314*)—ACTIONS—PERSONAL JUDGMENT.
    Where a husband transferred property to his wife to defraud creditors, but the wife did not participate in the fraudulent intent, and the property had been sold in foreclosure and she had none of the proceeds, a personal judgment for the value of the property would not be rendered against her.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 972; Dec. Dig. § 314.*]

4. FRAUDULENT CONVEYANCES (§ 163*)—FRAUDULENT INTENT OF GRANTEE—EFFECT.
    Where property was transferred with a fraudulent intent to hinder and delay creditors by putting the debtor's property out of his possession and out of the reach of his creditors, the transaction was fraudulent although the property was transferred as collateral security for a genuine debt.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 510, 517; Dec. Dig. § 163.*]

5. FRAUDULENT CONVEYANCES (§ 314*)—ACTIONS—PERSONAL JUDGMENT.
    Where stocks were transferred by a debtor with intent to hinder and delay creditors, in which intent the transferee participated, so that it could not be reached by supplementary proceedings, and it was necessary to bring an action to set aside the transfer, pending which the property became valueless, a personal judgment may be rendered against the fraudulent transferee for the value of the stock as of the date of the supplementary proceeding, when, but for the transfer, it might have been subjected to the payment of plaintiff's judgment.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 972; Dec. Dig. § 314.*]

6. EVIDENCE (§ 265*)—ADMISSIONS—CONCLUSIVENESS.

Where, in supplementary proceedings, a judgment debtor and a fraudulent transferee of stock testified that the stock was worth $50 a share, but in a suit to set aside the transfer, it appeared that it was valueless, they were bound by their admission as to its value, and a personal judgment would be rendered against the transferee for that amount.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

Judgment creditor's action by Silverius Koellhoffer against Andrew N. Petersen and others. Judgment for plaintiff against the defendant named.

Gross & Surpless, of Brooklyn, for plaintiff.
Joab H. Banton, of New York City, for defendant.

BENEDICT, J. The complaint in this action sets forth certain transfers of real and personal property alleged to have been made by the defendant Henry Hillebrand to the defendant Emily E. Hillebrand, his wife, and to the defendant Andrew N. Petersen, which transfers are alleged to have been fraudulent as to the plaintiff, a judgment creditor of Henry Hillebrand. The demand for judgment asks that the transfers set forth be declared fraudulent and void, and that the plaintiff have a discovery of property of the defendant Henry Hillebrand or held in trust for him.

Upon the trial evidence was introduced by the plaintiff, over defendants' objection and exception, of transfers of property other than those set forth in the complaint, and the court is asked to declare such transfers fraudulent; plaintiff claiming that the demand for discovery enables him to reach in this action any property belonging to the judgment debtor or held in trust for him, whether specifically mentioned in the complaint or not.

[1] Article 1 of title 4 of chapter 15 of the Code of Civil Procedure provides for the maintenance by a judgment creditor whose execution has been returned unsatisfied of an action "to compel the discovery of any thing in action, or other property belonging to the judgment debtor, and of any money, thing in action, or other property due to him, or held in trust for him." Section 1871. Section 1873 provides for the satisfaction of the sum due to the plaintiff "out of any money, thing in action, or other *personal* property, belonging to, or due to the judgment debtor, or held in trust for him, *which is discovered in the action*." The scope of the action seems not, however, to be limited to personal property but may also include real property. See Le Roy v. Rogers, 3 Paige, 234, and Throop's Annotated Code, note to section 1873; also Preliminary Note, preceding article 1 of title 4 of chapter 15 of the Code. The action provided for by the article of the Code above cited is virtually the same as the creditor's bill for the discovery of assets under the old chancery practice. It was authorized by the Revised Statutes (2 R. S. 173, §§ 38, 39, original numbers) but is not believed to have had its origin in a statute but to have been part of the inherent jurisdiction of equity. See Throop's Code, note to section 1871.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[2] The complaint in the case at bar seems, judging from the prayer for relief, to be framed in a double aspect, namely: First, to set aside certain transfers of property particularly mentioned; and, second, to obtain a discovery of any property of the judgment debtor or of property held in trust for him by the other defendants. There would seem to be no doubt of the right of a judgment creditor to maintain an action for a discovery and to reach in that action property of the debtor not specifically set forth in the complaint. Le Roy v. Rogers, 3 Paige, 234; Hart v. Albright, 28 Abb. N. C. 74, 18 N. Y. Supp. 718; Scoville v. Shed, 36 Hun, 165. But the complaint in the case at bar contains no allegation of the existence of any property of the judgment debtor, or held in trust for him, except the stock and the two parcels of real property alleged to have been fraudulently transferred. In fact, there is a statement that the judgment debtor has no other property out of which a satisfaction of the judgment can be obtained. See Complaint, par. 24. In other words, except for the prayer for discovery in the demand for relief, the complaint is appropriate to an action to set aside as fraudulent certain distinct transfers of property, and there is no allegation of fact in the complaint to support any prayer for discovery except with respect to the particular properties and transactions therein set forth. Under the old chancery practice it was necessary that the bill should charge "that the defendant has some property or equitable interests or things in action which ought to be applied to the payment of the complainant's judgment." 2 Barb. Ch. Prac. *164. This charge, however, might, it would seem, be in general terms, without specifying particular property. Id. *165; Bradt v. Kirkpatrick, 7 Paige, 62. And see Le Roy v. Rogers, 3 Paige, 234, and Hart v. Albright, 28 Abb. N. C. 74, 18 N. Y. Supp. 718, for the allegations appropriate to such a discovery. In a case like the present, there is a substantial reason for requiring, in addition to the allegations of particular transfers, a general allegation of other transfers or of the existence of other property, so that the defendants may be advised that other transactions than those specifically alleged are to be inquired into. I cannot, therefore, declare void any transfers other than those set forth in the complaint.

[3] There are three transfers of property set forth in the complaint: (1) That of the real property at Floral Park in Nassau county, conveyed first to Petersen and by him conveyed to Mrs. Hillebrand; (2) that of the East Fifth street property, conveyed directly to Mrs. Hillebrand; (3) that of the 88 shares of stock in the Farragut Realty Company, transferred to Petersen. The two properties conveyed to Mrs. Hillebrand are no longer in her legal ownership, as they have been sold in foreclosure, nor does she hold any proceeds thereof. From the evidence, I do not think that she participated in the fraudulent intent of her husband, and hence it would be improper to render a personal judgment against her for the value of these properties.

[4] The only remaining questions to be considered are whether the plaintiff is entitled to any relief with respect to the transfer to Petersen of the stock of the Farragut Realty Company, and, if so, to what relief. This stock Petersen still holds, claiming that it was given him

as collateral security for certain debts due from Henry Hillebrand or Hillebrand & Kluge. I am of opinion, however, that these claims, or some of them, are not genuine debts. But, assuming them to be genuine, there is a further question to be considered. If Hillebrand was actually indebted to Petersen, even in the full amount which the latter claims, but there was in fact a fraudulent intent to hinder and delay creditors by putting the debtor's property out of his possession and out of the reach of his creditors for his benefit, the transaction was fraudulent notwithstanding the debt. Metcalf v. Moses, 161 N. Y. 587, 56 N. E. 67; Tompkins v. Hunter, 149 N. Y. 117, 121, 43 N. E. 532. In my opinion the transfer of the stock to Petersen was with the intent on the part of Hillebrand, participated in by Petersen, that the stock should be held by the latter for the former to keep it out of reach of the former's creditors.

[5] Plaintiff claims to be entitled to a personal judgment for the value of this stock on the ground that it had a value at the time of the transfer and at the time he was maintaining supplementary proceedings on his judgment, but that it now has no value. Ordinarily a trustee of an express trust is not liable for the depreciation of securities in which he has properly invested the trust fund, unless he is chargeable with negligence; but there is abundant reason for applying a different rule to one declared a constructive trustee because of his participation in a wrongful act. In a case like the present, if Peterson had not accepted the transfer of the stock it would have remained in the judgment debtor's hands and could have been reached by supplementary proceedings. The transfer has prevented that and compelled the bringing of this action, during the pendency of which, it is claimed, the stock has depreciated in value. It is equitable that, if the transfer was fraudulent, the plaintiff should recover of the defendant Peterson the value of the stock as of the time when it might have been subjected to the payment of the plaintiff's judgment but for the transfer. This conclusion is supported by Ingersoll v. Weld, 103 App. Div. 554, 564, 93 N. Y. Supp. 291, 298 (First Dept. 1905), where the court, in an action to raise a constructive trust out of presumptive fraud based on the relations of the parties, said:

"As the defendant was obligated to restore the property to the true owners upon the death of Mrs. Blanchard, his refusal so to do was a wrongful act upon his part, and the plaintiffs were authorized to resort to any remedy which would protect the property and secure its return. They were therefore authorized to apply for and obtain an injunction pendente lite restraining Weld from disposing of the property, and if during that period, by reason of a decline in the value of the property, loss was entailed, such loss was a direct consequence of the act of the defendant in his refusal to surrender to the true owners the property of which he was possessed."

It was held, however, that he could not be required to restore the property and also pay its value, and the judgment was modified so as to be interlocutory and to direct an accounting. See, also, Hosmer v. Tiffany, 124 App. Div. 287, 108 N. Y. Supp. 943.

[6] In the case at bar the defendants' Hillebrand and Petersen both testified in supplementary proceedings in June, 1911, that the stock was worth $50 a share or five times its par value and on the

trial, two years later, that it was worth nothing. Despite the claim that they made a mistake in their earlier testimony, I think they are properly held bound by their admission. The fraudulent transfer and Petersen's participation therein have thus resulted in damage to the plaintiff to the extent of $4,400, with interest from June, 1911; and for this amount the plaintiff should have judgment against Petersen.

Submit decision and judgment accordingly.