ELLIOTT SCHOOL DISTRICT NO. 23, Elliott, North Dakota, Respondent, v. O. M. GORDER, Appellant.

(215 N. W. 281.)

**Fraudulent conveyances — transfer of bank stock, entire property of debtor, without consideration, held fraudulent.**

1. One H. P. Holen transferred forty-five shares of bank stock to the defendant, O. M. Gorder, and the evidence in this action by a creditor, against O. M. Gorder, fully sustains the findings and conclusions of the trial court, that the sale of said bank stock was fraudulent, without consideration, and with intent to defraud the creditors of the said H. P. Holen.

**Fraudulent conveyances — fraudulent transferee of bank stock held liable to transferrer's judgment creditors for its value.**

2. In an action against a fraudulent transferee, who took the property fraudulently sold, outside of the jurisdiction of the court, where it could not be reached by execution, or on supplementary proceedings, and retained the same until it became entirely worthless, the plaintiff creditor is entitled to a judgment for its value.

**Fraudulent conveyances — evidence held insufficient to sustain value placed on bank stock fraudulently sold.**

3. Evidence examined, and *held* insufficient to sustain the value placed on bank stock fraudulently sold by the trial court.

Opinion filed August 20, 1927.   Rehearing denied October 13, 1927.

Fraudulent Conveyances, 27 C. J. § 459 p. 669 n. 98, 1 New; § 770 p. 821 n. 39;

---

Annotation.—(2)   On the question as to whether creditor of fraudulent vendor, without lien, may maintain an action ex delicto or ex contractu against a fraudulent vendee who has converted to his own use or disposed of the property fraudulently transferred, see annotation in 47 L.R.A. 433; 26 L.R.A.(N.S.) 548; 12 R. C. L. 645; 2 R. C. L. Supp. 1465.

p. 822 n. 55 New; § 777 p. 830 n. 17; § 779 p. 833 n. 46; § 820 p. 855 n. 28; § 821 p. 855 n. 29, 30, 31.

Appeal from the District Court of Ransom County, *Wolfe,* J.
Reversed.

*Kvello, Adams, & Rourke,* for appellant.

"A fraudulent grantee who accepts a conveyance of property for the purpose of enabling the grantor to keep it from his creditors is liable to account therefor as a trustee for such creditors." 27 C. J. 668.

"A proceeding to subject property to the payment of the creditors' debts on the ground that it has been fraudulently conveyed without such property remaining to satisfy the creditors is a proceeding in rem." Kolb v. Mall (Iowa) 174 N. W. 226.

"In an action to set aside a fraudulent conveyaance, the court may award a money judgment against the grantee where he had depreciated the value of the property, or put it out of his power to reconvey by a sale thereof." Mallouk v. American Exch. Nat. Bank, 142 N. Y. Supp. 724.

"If a fraudulent purchaser has sold the property to a bona fide purchaser so that it cannot be reached by creditors a personal decree may be entered against him for the amount of the debt, the proceeds of the sale being insufficient to pay it." Root v. Close (W. Va.) 98 S. E. 733.

*Chas. S. Ego,* for respondent.

"In weighing the probabilities of the transferee's good faith, courts have resort to the so-called badges of fraud. Their character must not be misunderstood. Of themselves, they conclusively prove nothing, but they have probative value of varying force." Glenn, Creditors' Rights & Remedies, ¶ 146.

"Pronounced insolvency at the time of the grant would be, no doubt, a strong circumstance tending to show fraudulent intent, and in the absence of other controlling facts it would be sufficient to justify a finding of such intent." Emmons v. Barton, 42 Pac. 303.

"A court of equity will always award damages in case equitable relief cannot be given, or has become impracticable, for any reason." Van Dusen v. Bigelow, 13 N. D. 277, 100 N. W. 723.

"Having jurisdiction for one purpose strictly equitable, the court will dispose of the whole controversy, even though in so doing it may

be called on to administer relief which pertains to courts of common law." Miller v. R. Co. (Ala.) 3 Am. St. Rep. 722.

BURKE, J. The plaintiff, having recovered a judgment against one H. P. Holen in the sum of $9,201.94 upon a depository bond, claims that the said H. P. Holen sold and transferred forty-five shares of stock in a bank at Englevale, North Dakota, to O. M. Gorder, and ten shares of stock in said bank to one G. K. Opgaard, all the property that the said H. P. Holen had in the state of North Dakota; that the sale was entirely without consideration and was made for the purpose of cheating and defrauding the creditors of the said H. P. Holen, and hindering and delaying them in the collection of their claims; and that the defendant, O. M. Gorder, who is a nephew of the said H. P. Holen, planned and connived with the said H. P. Holen to dispose of the said property with the intent to cheat and defraud the creditors and to hinder them, and delay them, in the collection of their claims, and that the said bank stock was at the time of its fraudulent conveyance of the value of $9,000.

The defendant claims that he purchased the stock in good faith, and paid for it with a note, which note is the property of the Farmers' State Bank of Thomas, South Dakota.

The trial court found as facts, that on the 5th day of December, the plaintiff recovered of H. P. Holen, F. F. Babcock, and Adolph Adolfs judgment for $9,201.94; and that before commencement of this present action, execution was issued on said judgment and returned to the clerk of the court by the sheriff wholly unsatisfied, and prior to the commencement of this action, an order of the court was issued for the examination in supplementary proceedings of H. P. Holen, an examination of said Holen was had, certified, returned, and filed in this action; that the said Holen, and defendant, have been for more than four years before the commencement of this action, and now are, the owners of the controlling interest in the Farmers' State Bank of Thomas, South Dakota, which bank is known as the "family bank;" that Holen is the uncle of the defendant Gorder; that during all of said time defendant has aided and assisted Holen in the management and control of the State Bank of Elliott; and the First State Bank of Englevale, North Dakota; and has aided and assisted

the said Holen in various business enterprises in and out of the state of North Dakota and was familiar with and had knowledge of the business affairs and financial standing of said Holen; that after the insolvency of the Elliott State Bank, but before the entry of judgment of this plaintiff against the said H. P. Holen, and before the transfer of the stock of the bank of Englevale to the defendant, the defendant knew and had notice that Holen was obligated to pay from twelve or fifteen thousand dollars as security on depository bonds of the State Bank of Elliott, and the defendant had notice of the pendency of suit on said bonds against Holen as early as September, 1924; that at the time of the entry of judgment against H. P. Holen he was the owner of fifty-five shares of capital stock of the First State Bank of Englevale, of the value of $11,000, and Holen had no other property in this state out of which creditors might have satisfaction of their demands; that on or about the date of the entry of said judgment, H. P. Holen assigned and transferred to this defendant forty-five shares of the capital stock of the said bank of Englevale, which was agreed by the said Holen, and said defendant to be worth $9,000, and the assignment was dated back to a time long prior to the closing of the state bank of Elliott, and long prior to the date of the entry of said judgment for the purpose and with the intent upon the part of both Holen, and defendant, of hindering, delaying, and defrauding creditors of the said Holen; that the said defendant knew that by such transfer the said Holen became insolvent and had no other property out of which the demands of creditors could be satisfied; that such transfer was wholly without consideration, and at the time the defendant was advised and had knowledge of the intent and purpose of said Holen and actively aided and assisted the said Holen in his fraudulent intent; that the defendant while holding the legal title to the said stock has permitted the same to depreciate in value, and that by reason of the acts of the defendant in withholding said property beyond the jurisdiction of the courts, and from legal process and for the purpose of hindering, and delaying and defrauding the creditors of said Holen, the defendant has caused said property to become valueless, has damaged the plaintiff in the sum of $9,000; that under the facts and circumstances a decree setting aside said transfer would afford plaintiff no relief, and the doing of equity requires defendant to pay the plaintiff $9,000, the value of the

stock at the time of the transfer, and judgment was duly entered in favor of the plaintiff and against the defendant for the sum of $9,000.

We are of the opinion that the evidence clearly sustains the findings and conclusions of the trial court, and that the sale of the stock in question was fraudulent and void under § 7220 Comp. Laws 1913, which provides; "Every transfer of property with intent to delay or defraud any creditors is void as against all creditors," but the defendant insists that even though the sale is fraudulent, and void, the plaintiff is not entitled to a personal judgment against the defendant. It is true, as stated in 27 C. J. 855, § 820: "The general rule is, that so long as the property remains in the possession of a fraudulent transferee he is not liable to a personal judgment." This is the rule, however, when the sale can be set aside and the property returned to the defendant without loss, but as further stated in § 821, 27 C. J. 855: "A court of equity has the power to adapt its relief to the exigencies of the case, and may award a personal judgment against a party in lieu of setting aside a transfer where the facts establish such personal liability. The most frequent application of the principle contained in this limitation occurs where the fraudulent transferee has sold, concealed, or mingled the property with his own, in such a manner that it cannot be reached or identified. So a personal judgment may be awarded against the transferee where the value of the property has depreciated by reason of his acts." As stated in the text, "The most frequent application of the principle occurs where the transferee has sold, concealed, or mingled the property with his own." These decisions are based upon the principle that the transferee has by his wrongful act placed himself in a position where he cannot return the property, and, therefore, he is liable for its value. We are of the opinion that the same principle applies when the transferee has taken the property outside the jurisdiction of the court, where it cannot be reached by execution or upon supplementary proceedings, and retains it until it becomes entirely valueless as the evidence shows in this case.

In the case of Koellhoffer v. Petersen, 82 Misc. 180, 143 N. Y. Supp. 353, it was held: "Where stocks were transferred with intent to hinder and delay creditors so that it could not be reached by supplemental proceedings, and pending action to set aside the transfer, the stock became valueless a personal judgment may be rendered against

the fraudulent transferee for the value of the stock. This decision was modified in 163 App. Div. 971, 148. N. Y. Supp. 1125, by striking out the personal judgment without comment. An examination of the case as reported in 82 Misc. 180, 143 N. Y. Supp. 353, will show that the principle was hardly applicable to the facts in that case, in the light of other decisions of the New York court. In that case Peterson claimed that the stocks were given to him as collateral security for certain debts, the court says, "I am of the opinion however, that these claims or some of them are not genuine debts but, assuming them to be genuine, there is a further question to be considered, if Hillebrand was actually indebted to Petersen, even in the full amount which the latter claims, but there was in fact a fraudulent intent to hinder and delay creditors by putting the debtor's property out of his possession and out of the reach of his creditors for his benefit, the transaction was fraudulent notwithstanding the debt."

In the case of Wasey v. Holbrook, 141 App. Div. 336, 125 N. Y. Supp. 1087, the court said: "If the suit be in equity, the court will adapt itself to the exigencies of the case, but it will order a sum of money to be paid to the plaintiff, or give him a personal judgment therefor, only when that species of relief is necessary to prevent a failure of justice, or where for any reason it is impracticable to grant the specific relief prayed for. Personal judgment can only be given against the transferee when it appears that he has done some act which makes it impossible for him to return the property or else has destroyed, or impaired its value."

In the case of Hosmer v. Tiffany, 124 App. Div. 287, 108 N. Y. Supp. 943, the court said: "The judgment should be modified by striking out that part of it requiring Lucile A. Tiffany to pay to the plaintiff the value of the use and enjoyment of the property and inserting in place thereof a provision that she pay such sum of money as shall represent the depreciation of the value of the property." See Salt Springs Nat. Bank v. Fancher, 96 Hun, 327, 36 N. Y. Supp. 742; Mason v. Pierron, 69 Wis. 585, 34 N. W. 921.

In the case of Boessneck v. Edelson, 40 App. Div. 631, 57 N. Y. Supp. 1029, the court said: At the time of the conveyance the defendant loaned Edelson $1,854.21, and to secure it Edelson executed the power of attorney under which the defendant was authorized to collect

the rents and profits derived from the premises conveyed until there shall have been collected and received by her the full sum of $1,854.21. Under this power of attorney, the defendant collected the rents, and the fraudulent transfer to the defendant did not affect her right to retain possession of the property under her power of attorney until she had collected sufficient to satisfy the amount of the loan. From these decisions it appears that a personal judgment cannot be entered against the transferee unless he has disposed of the property, mingled it with his own, so that it cannot be identified, or where by his wrongful acts it has become valueless. If he has disposed of it to an innocent purchaser it is valueless to the creditor, if he has mingled it with his own so that it cannot be identified and recovered, it is valueless to the creditors, and it is none the less valueless to the creditors if he has taken it out of the jurisdiction of the court where it cannot be reached by execution or in supplementary proceedings.

It is the further contention of the defendant, that the court erred in finding the value of the stock fraudulently sold to the defendant at $9,000. Upon this subject the defendant testified, "I purchased forty-five shares of the stock. As to the book value that was uncertain, I paid $200 a share, or $9,000. I gave notes for $9,000 payable to the Farmers' State Bank of Thomas, South Dakota. The notes were made payable to the State Bank of Thomas to take care of paper that Mr. Holen sold the bank. The note was due in December, 1924, I have not paid it, nor any part of it, nor any interest, it draws 8 per cent. Opgaard has not paid the $2,000 nor any part of it, nor interest, both notes drew 8 per cent." Mr. Holen testified, "It is pretty hard to say what the stock was worth at the time of the sale. We thought it ought to be worth at least $200 a share at the time. Mr. Gorder gave his note for $9,000 with the understanding that if later on it proved that the stock was not worth $200 a share he could take credit on his note for the difference. Opgaard testified, "I bought on a kind of a contract, if it was worth what they asked, I was to pay it, if it wasn't, I wasn't supposed to pay anything for it. . . . Pay whatever it was worth inside of a year. . . . I haven't paid anything, I signed a note for $2,000 for ten shares which was returned to me and I destroyed it." The stock was purchased in December, 1924, or January, 1925, and in the spring of 1925, there was a 100

per cent assessment on the stock of the Englevale bank which was paid by Holen. Holen also paid the assessment on the Opgaard stock. Sometime thereafter the Englevale bank failed, and under all of these facts and circumstances the fraudulent sale, the assessment of the bank, the failure of the bank, the return of the Opgaard note without payment, the nonpayment of the defendant's note, and interest, the findings of the court that the whole transaction was without consideration, it does not seem that the stock was worth $200 per share at the time of the purchase. It is accordingly held, that the evidence is insufficient to sustain the findings of the trial court, that the stock was worth $200 per share at the time of the sale. The judgment of the lower court as to this finding is reversed, and a new trial is ordered for the sole and only purpose of determining the value of the stock sold to the defendant Gorder at the time of the sale. It is so ordered.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.