ELLIOTT SCHOOL DISTRICT NO. 23, Elliott, North Dakota, Respondent, v. O. M. GORDER, Appellant.

(223 N. W. 694.)

Opinion filed February 21, 1929.

*Kvello, Adams & Rourke,* for appellant.

*Chas. S. Ego,* for respondent.

BURKE, Ch. J.   On a former appeal this case was remanded to the trial court for the sole purpose of determining the value of forty-five shares of stock in the State Bank of Englevale, which was transferred to the defendant, O. M. Gorder, by P. H. Holen, at the agreed price of $200 per share, the defendant giving his note in payment of said stock to the Bank of Thomas, S. D., in the sum of $9,000 to the Farmers' State Bank of Thomas at Thomas, S. D. Elliott School Dist. v. Gorder, 55 N. D. 823, 215 N. W. 281.

There was a new trial of the facts relating to the value of said shares of bank stock, and the trial court found, that the shares of stock in said bank were of the value of $140 per share and of the aggregate value of $6,300, judgment was duly entered thereon, and the defendant again appeals.

On the 10th day of December, 1924, H. P. Holen transferred forty-five shares of the capital stock of the First State Bank of Englevale, N. D. to the defendant, O. M. Gorder, for the agreed sum of $200 per share. Gorder at that time gave his note payable to the Farmers' State Bank of Thomas, Thomas, S. D., for $9,000, payable one year from date at eight per cent interest. Gorder testifying on the value of the shares as follows: "As to the book value that was an uncertain thing. I paid $200 a share or $9,000 by giving a note for $9,000. Mr. Gunderson, the cashier, Mr. Holen and myself talked over the matter in the back room of the bank at Englevale. I think it was December fourth. We were up there checking up things. We checked up the

bills receivable and the total loans and discounts, the bills payable and checked up on other book accounts. We checked over and appraised all of the bills receivable and the amount of cash on hand. We made a regular audit of the bank. Yes, we probably did take a note and say now how is this fellow, and that would be making an inquiry as to the condition."

In relation to the value of the stock H. P. Holen testified: "We discussed the thing, and we thought it ought to be worth at least $200 a share. On the fifth day of December, 1924, I sold forty-five shares to Mr. Gorder, he is my nephew. Mr. Gorder paid for the stock with a note for $9,000. I heard Mr. Gorder's testimony, it is true, only that he failed to tell you that if later on it proved that the stock was not worth that much, that he would not pay the note. No, I did not agree to take the stock back, but if he found that the stock was not worth what he was paying for it, there would be that much deducted off the note. The note was made directly to the bank of Thomas, it was given to the bank of Thomas, and has been in the possession of, and owned by the bank of Thomas ever since. Yes sir, I left it to Gorder to find out how much the stock was worth. It was to be determined by himself or someone else." Question, "In other words, you fixed the value of $200 a share and took his note for $9,000 payable to a third person?" Ans. "Yes sir." Ques. "In the same transaction you told him that if he found the stock wasn't worth $200 he might take credit for the difference." Ans. "Yes sir, I intended the note should go to the Farmers' State Bank of Thomas in good faith and intended that the bank should own the note, it has owned it ever since."

In the last trial the plaintiff offered in evidence exhibit "A" which is a bank report by the examining committee to the bank examiner. Exhibits "D" and "E" are ledger sheets from the bank, and exhibit "G" a page from the minute book of the Englevale bank containing a report of the stockholders' auditing committee made at the annual meeting next following the transfer of this stock and of which committee the defendant, O. M. Gorder, was a member. The book value of the stock as shown by Exhibit "D" is $169.31 per share, as shown by exhibit "A" it is $179.90 a share and as shown by exhibit "E" $170.90 a share.

It is the contention of the defendant, that the exhibits showing the

book value of the stock should have been excluded as they are not proof of the actual value of the stock in question, as held in the case of Patterson v. Plummer, 10 N. D. 95, 86 N. W. 111.

In the case of Patterson v. Plummer, supra, the court held, "The written report of officers of a National Bank to the comptroller of the currency, . . . does not purport to give the actual or estimated value of the bank's property, and is incompetent *alone* as a basis from which to deduce the actual value of the bank stock." In that case, the only evidence offered were the books of the bank for the purpose of showing the actual excess value of the stock above the purchase price. The bank was a going concern at the time of the trial of the action, and the measure of damages was the difference between the price agreed to be paid for the stock and the actual value. It was urged that the actual value was ascertained by proving what is called book value, and no other evidence was offered to prove the actual value of the stock, and the court held, that the report was not admissible for the purpose of proving actual value.

In the case at bar, the bank has been in the hands of the receiver since July 3, 1926, the defendant, O. M. Gorder, and H. P. Holen knew more about the value of the stock of the State Bank of Englevale at the time of its sale than any one else. Before the sale they talked it over with cashier Gunderson, they checked up the assets and both testify, that they agreed, that the stock was worth $200 per share, and Gorder gave his note for $9,000 the purchase price.

On January 27, 1925, the defendant, O. M. Gorder, as a member of the examining committee signed and swore to a report to the State Bank Examiner in which he says, "we the undersigned members of the examining committee of the State Bank of Englevale, hereby certify, that we have made a thorough examination of the condition of the above named bank and are of the opinion that the assets of the bank are not carried on the books thereof in excess of their actual value except, there are some bills receivable that will have to be charged off, such as, Sidney Griffith and Henry Stroch, and possibly a few small notes, this will depend on conditions." This, of course, does not prove the actual value of the stock, but it is a circumstance and an admission on the part of the defendant, O. M. Gorder, that the assets were not car-

ried in excess of their actual value, except, the two notes mentioned and a few small notes.

In February the bank examiner made an assessment of 100 per cent, which was paid by H. P. Holen and $10,000 worth of notes were taken out of the assets, including the Sidney Griffith and Henry Stroch notes, and this placed the bank in good standing. H. P. Holen must have been of the opinion at the time he paid the assessment of one hundred per cent, that the stock was worth par, and his knowledge is chargeable to O. M. Gorder for it is clear from the evidence that they were acting together, and for the purpose of hindering, delaying and defrauding Holen's creditors, as decided in the former trial. Elliott School Dist. v. Gorder, 55 N. D. 823, 215 N. W. 281.

The books and the assets of the bank had been examined by Gorder before he purchased the stock, and again as a member of the examining committee. We are of the opinion that the evidence was admissible, for the purpose of showing the defendant's connection with the bank, and his means of knowledge of the value of the stock. The memorandum opinion of the trial judge also states, "the value of the stock as found was not based on the book value, and so the cases cited by defendant's counsel are not applicable."

In Patterson v. Plummer, supra, and Scandinavian American Bank v. Westby, 41 N. D. 276, 172 N. W. 665, it is held "that bank stock is presumed to be worth par, and until the contrary is shown by competent testimony and there is no evidence in this case sufficient to overcome the presumption."

The testimony of Holen and Gorder is competent, and while they are adverse witnesses, interested in proving the stock worthless they both admit that at the time of the transfer of the stock that it was their judgment after an investigation that it was worth $200.

"The value of stock may be shown by the testimony of persons connected with the business and having personal knowledge of its affairs." Aldrich v. Bay State Constr. Co. 186 Mass. 489, 72 N. E. 53; Cabble v. Cabble, 111 App. Div. 426, 97 N. Y. Supp. 773; Steele v. Kellogg, 163 Mich. 132, 128 N. W. 403; Nelson v. First Nat. Bank, 16 C. C. A. 425, 32 U. S. App. 554, 69 Fed. 798.

It is clear from the evidence that Gorder and Holen had a thorough knowledge of the assets and liabilities of the bank at the time of the

purchase of the stock. They had been in the banking business for many years, they knew land values, the value of farmers' paper at that time, and were well qualified to examine and audit the bank. The kind of an examination which Gorder said they gave the bank showed the assets and liabilities of the bank and it was upon that they based the values of the stock, that is upon the assets and liabilities of the bank, which is the proper measure of value when stock has no market value. Fletcher, Cyc. Corp. § 3451, page 5674. Gorder's examination of the bank as a member of the examination committee also shows discrimination and accurate knowledge of the value of bank paper. He picked out the Sidney Griffith and Henry Stroch notes for large amounts which were later ordered out by the bank examiner. But at the time of the transfer, Gorder and Holen knew about these bad notes, knew that the book value of the assets were based partly upon their value, knew they would have to be taken out of the bank and in a few months after the transfer they were taken out and the hundred per cent assessment on the forty-five shares of stock was paid, not by Gorder, the holder, but by Holen, indicating that the stock still belonged to Holen and that the transfer was made to give the stock a fictitious value and swell the assets of the bank of Thomas, S. D., with the note for $9,000 which Gorder gave that bank in payment for the stock which it is admitted it did not own, and upon which Gorder has never paid any interest and now claims is without consideration. Taking into consideration the evidence that there were bad assets in the bank at the time of the transfer, that within a few months, there was a hundred per cent assessment, and that the bank failed a little more than a year thereafter, we are of the opinion that evidence will not sustain a finding that the value of the stock was more than par at the time of the transfer, but will sustain a finding that it was worth par, and the plaintiff is entitled to judgment against the defendant for $4,500, the par value of forty-five shares of stock in the Englevale bank and interest thereon, at the rate of six per cent per annum from and after the tenth day of December, 1924, and for costs, and as thus modified the judgment is affirmed with costs to the plaintiff.

Burr, Birdzell, Christianson, and Nuessle, JJ., concur.