TUTHILL, Appellant, (and cross-respondent), v. SHERMAN, Respondent (and cross-appellant.)

(2 cases.)

(165 N. W. 4.)

(File Nos. 4185-4193. Opinion filed November 22, 1917.)

**1. Appeals—Error—Pleading, Sale Contract, Amendment Alleging Future Sale—Abuse of Discretion.**

Where plaintiff sued to recover alleged purchase price of corporate stock, under an alleged contract of sale thereof, and on appeal from a judgment granting defendant a new trial after verdict for plaintiff, the Supreme Court held the contract was not one of sale, but for a sale to be thereafter consummated, and upon remand plaintiff was allowed to amend his complaint so as to recover upon theory that the contract was one of sale to be thereafter consummated (Civ. Code, Sec. 2303, Subd. 2) and not one of sale (Civ. Code, Sec. 2302), **held,** that the order allowing such amendment was not an abuse of judicial discretion.

**2. Pleadings—Amendment Changing Allegations From Sale, to Contract for Future Sale—Amendment on Payment of Accrued Costs—Error.**

Where, upon new trial after appeal to Supreme Court, plaintiff was allowed to amend a complaint alleging a sale contract, so as to allege a contract for a sale in future, upon condition that, if plaintiff was ultimately successful, he might tax costs accruing prior to amendment, **held,** that the order allowing the amendment should be modified, regardless of final outcome of case, plaintiff being not allowed to tax costs for first trial, but being required to pay such costs on first trial as defendant would have been entitled to tax had he been successful thereon.

**3. Evidence—Damages, Measure of—Future Sale of Corporate Stock—Value, Insurance Report, Competency.**

In a suit for for damages for breach of contract to purchase in future certain stock of insurance company, (Civ. Code, Sec.

2303, Subd. 2) **held,** that a written report by the insurance company to the insurance department, giving the "book value" of certain corporate assets of the company, standing alone, was of at least of questionable competency as evidence of value.

4. **Same—Suit for Damages, Future Purchase of Corporate Stock— Market Value, Evidence of—Financial Condition of Going Concern, Competency—Excluding Evidence, Error.**

Where, in a suit for damages for breach of alleged contract of future purchase of corporate stock of an insurance company, plaintiff having introduced in evidence a written report by the insurance company to insurance department giving the "book value" of certain assets, **held,** that trial court erred in excluding evidence offered by defendant, based upon theory that such financial statement was not conclusive evidence of value of the stock and that defendant could introduce evidence to show real financial condition of the company as a going concern, and that as such concern it had a line of agencies of money value to the corporation; it being the supposed value of the corporation as a going concern, and not necessarily its mere tangible assets and liabilities as shown by their book values, that fixes the market value of stock. **Held,** further, that even where there is established market value, it is but prima facie evidence of true value, which latter is not the supposed but the actual value of the corporation as a going concern.

5. **Same—Damages for Breach of Future Purchase Contract— Value of Assets of Going Concern—Excluding Evidence, Whether Prejudicial Error.**

In such case, where, under the evidence received the greatest possible value of the insurance stock was far less than as found by the jury, so that, even with all the testimony so offered and rejected, no such value could have been established, the error in rejecting the evidence was non-prejudicial.

6. **Same—Damages for Breach of Future Stock Purchase—Value— Directing Verdict for "Highest Value" Shown by Evidence— Error—Question for Jury.**

Where, in a suit for damages, under Civ. Code, Sec. 2303, Subd. 2, for breach of contract of future purchase of insurance stock, plaintiff moved for directed verdict on ground that defendant had not proven "any facts sufficient to constitute a defense," but instead of asking for verdict in a fixed amount, asked that jury be directed to fix amount of verdict by taking highest value of stock shown by evidence, "towit, the statement made by the insurance company to the department of insurance," the motion was properly overruled; it being clear that different minds might reach different conclusions as to the

"highest value" shown by the "statement;" that the highest value of said stock—even basing same on the "statement"—being open to dispute, was a question for jury.

7. **Same—Future Purchase Contract, Damages for Breach—Defense of Fraud—Striking Defendant's Evidence, Error in Refusing—Mutual Mistake of Fact, As Affecting.**

Where, in a suit for damages for breach of a contract of future purchase of insurance stock, the defense alleging, among other things, fraudulent representation by plaintiff as inducing the contract, and the evidence being conflicting as to whether defendant entered into the contract by being mislead by plaintiff's statement as to whether he had in fact entered into the contract sued upon, **held**, that, construing the evidence as reasonable men guided by human experience, the most the Supreme Court could say is that there was evidence from which jury might have said that the contract sued upon was founded upon mutual mistake; and trial court erred in not taking question of fraud from jury. **Held**, further, that, the jury having treated the stock as worth much more than its actual value, and the Supreme Court being unable to explain their verdict upon ground that it was affected by their doubts as to the existence of the defense pleaded, in determining the amount of their verdict, such ruling was prejudicial error.

8. **Trials—Damages for Breach of Future Stock Purchase—Requested Instruction for Defendant Under Mutual Mistake—Mistake Not Pleaded—Theory of Trial, Effect.**

In a suit for damages for breach of sale of corporate stock to be thereafter consummated, defendant's request for a directed verdict in his favor if found from evidence that both parties entered into the contract under a mistaken belief of facts, was properly refused; no such defense having been plead; no amendment of pleading to conform to proof being sought, and such defense being considered inconsistent with defendant's position throughout the trial.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by S. G. Tuthill, against P. F. Sherman, to recover damages for alleged breach of a contract of sale of insurance stock to be consummated in future. From a judgment for plaintiff for part of relief prayed for, and from an order denying a new trial, plaintiff appeals, and defendant cross-appeals. Judgment and order denying a new trial reversed, on plaintiff's appeal, and order granting plaintiff leave to amend, modified.

*Boyce, Warren & Fairbank,* for S. G. Tuthill.

*Cherry & Abbott,* for P. F. Sherman.

(2) To point two of the opinion, Defendant and Cross-Appellant, Cited: Steere v. Gingery, 24 S. D. 423, 123 N. W. 863; Murphy v. Plankinton Bank, 20 S. D. 178, 105 N. W. 245; Driskill v. Rebbe, 22 S. D. 242, 117 N. W. 135; Wolfinger v. Thomas, 22 S. D. 57, 115 N. W. 100; Gadsden v. Thrush, 72 Neb. 1, 99 N. W. 835; Boardman v. Louis Brach Const. Co., 123 Iowa, 603, 99 N. W. 176; LeMars Bldg. & Loan Assn. v Burgess, 129 Iowa, 422, 105 N. W. 641; 7 Am. & Eng. Enc. Pl. & Pr., p. 368.

(4) To point four of the opinion, Defendant and Cross-Appellant, cited: Patterson v. Plummer, 10 N. D. 95, 86 N. W. 111; Feige v. Burt, (Mich.) 83 N. W. 367; Ind. & Cen. Trust Co. v. Tod, 180 N. Y. 215, 73 N. E. 7; Henry v. N. A. Const. Co., 158 Fed. 79, 85 C. C. A. 409; Hindman v. First Nat. Bank, 112 Fed. 931, 57 L. R. A. 108.

Plaintiff-Appellant cited 13 Encyc. of Ev. 560, 527; Hewitt v. Steele, 24 S. W. 440.

(6) To point six of the opinion, Plaintiff and Cross-Appellant, cited: Pierce v. Schaden, 62 Cal. 283; Schweitzer v. Connor (Wis.) 14 N. W. 922; Hardy v. Hohl (Wash.) 39 Pac. 277; Frank v. Symons, 88 Pac. 561; 22 Enc. Plead. & Pract. 915, and cases there cited.

(7) To point seven of the opinion, Plaintiff and Cross-Appellant, cited: Bilafsky v. Conveyances Title Ins. Co., 78 N. E. 534.

Defendant and Cross-Appellant, cited: 9 Cyc. 388, 395, 396, 397, 399, 400, 410, 425; McCormick Harv. Mach. Co. v. Woulph, 11 S. D. 252; Dambmann v. Schulting, 75 N. Y. 55; Id. 85 N. Y. 623; Civ. Code, Sec. 1206; 20 Cyc. 32, 34-35, 60.

WHITING, J. This cause was before us upon appeal from a judgment rendered on a former trial, our opinion being reported in Tuthill v. Sherman, 36 S. D. 237, 154 N. W. 518. Reference is made to such opinion for a statement of the cause of action then pleaded. It will be seen that, upon the former trial, plaintiff sought to recover the alleged purchase price of certain insurance stock, such alleged right of recovery being based upon a written contract the material parts of which will be found recited in our former opinion, plaintiff's theory being that the contract was one of sale under which title to the ten shares of stock had passed to

defendant, thus giving plaintiff a right to recover under section 2302, C. C. We held that the contract was not one of sale, but for a sale to be thereafter consummated; that the title to the stock had never passed to defendant; and that plaintiff could only recover under subdivision 2, § 2303, C. C. We suggested that it would become necessary for the appellant, before another trial, "to seek an amendment of his complaint." Plaintiff was allowed to amend his complaint. Thus, while the second action was brought upon the same contract, it was brought to recover the damages allowed under said subdivision 2, § 2303, C. C., being the difference between the agreed purchase price of said stock and the value of said stock on the 20th day of December, 1911, the time on or before which defendant had covenanted to consummate the purchase. Defendant, answering, alleged that the contract was not binding upon him because procured through fraud and deceit. Trial was had to a jury. There was verdict for plaintiff in the sum of $800 upon which a judgment was entered. From such judgment and orders denying a new trial each party has taken an appeal, which appeals have been consolidated for the purposes of presentation and disposition.

Plaintiff's assignments of errors present in reality but two matters: Were the facts proven sufficient to justify the court in submitting to the jury the question of fraud? If the answer to the first question should be in the negative, then was there such undisputed evidence as to the value of the insurance stock as to entitle plaintiff to a direction of verdict?

Defendant's assignments of error present but three matters: Was it error to allow plaintiff to amend his complaint? Was it error to exclude certain testimony offered upon the question of the value of the insurance stock? Was there error in the instructions given and in the refusal to give certain instructions?

We will consider the various questions raised in what seems to us to be their regular order, to-wit: (1) That relating to the amendment of the complaint. (2) That relating to the exclusion of evidence as to value of insurance stock. (3) Those relating to plaintiff's right to an instructed verdict, including therein: (a) Question of sufficiency of proof of fraud; (b) Certainty as to highest value of insurance stock under the undisputed evidence. (4) Those relating to instructions given and refused.

[1] The decision of this court upon the former appeal left the
trial court entirely free to determine whether an amendment to
the complaint should be granted, and, if so, upon what terms.
Defendant contends that the proposed amendment would so change
the cause of action as to render its allowance an abuse of judicial
discretion.    Under both complaints plaintiff sought to recover
upon the one contract, and, while, under the one, he was seeking
to recover upon the theory that the contract was one of sale
under which title to the stock had passed to defendant, and, under
the other, upon the theory that the contract was one for sale
under which the title to such stock did not pass, the trial court
did not abuse the discretion in it vested when it allowed the
amendment.    The right to amend was granted subject to the
condition that, if plaintiff was ultimately successful, he should
have no right to tax any costs accruing prior to the time of the
amendment.    Defendant contends that, under the uncontradicted
showing made by him as to the expenses he had been put to in
meeting the unfounded claims presented upon the first pleading,
the terms imposed on plaintiff were too light.    We think the order
allowing the amendment should be modified so that, regardless
of the final outcome of this cause, plaintiff be not allowed to tax
costs for the first trial, but be required to pay such costs on the
first trial as defendant would have been entitled to tax if he had
been successful upon that trial.

[3] The evidence showed that the insurance stock in ques-
tion had no established market value.    There was testimony as to
what one party had given for some of such stock.    There was
received in evidence on behalf of plaintiff a written report or
statement made by the insurance company to the insurance depart-
ment of this state.    After the receipt of this statement in evidence,
defendant offered evidence based upon the theory that such finan-
cial statement was not conclusive evidence of the real value of
such stock; and that defendant had a right to introduce evidence
tending to show the real financial condition of the insurance com-
pany as a going concern, and as a basis for that to prove that the
insurance company was a going concern having a line of agencies
established at considerable cost and of a money value to the cor-
poration.    Such evidence was excluded.    This was clearly error.
It is the supposed value of a corporation as a going concern, and

not necessarily the mere amount of its tangible assets and liabilities as shown by their book values that fixes the market value of stock. But even where there is an established market·value, such market value is but prima facie evidence of the true value—the true value is not the supposed, but the actual, value· of the corporation as a going concern. This is a proposition too well settled to admit of question at this date. Ewert v. Taylor, 160 N. W. 797; 2 Cook on Corporations (6th Ed.) § 581. The report to the state insurance department gave the "book value" of certain assets. It is at least questionable whether such a report standing alone, is competent evidence of value. We are inclined to agree with the following from Patterson v. Plummer, 10 N. D. 95, 86 N. W. 111, wherein the court was considering a report of a national bank made to the Comptroller of the Currency as evidence of the value of the bank's stock:

"What evidence has been offered to show that it had an actual value greater than its par value? None whatever. No testimony was introduced to show the actual value of the stock, and no evidence as to the actual value of the property of the corporation. The report of the cashier to the Comptroller is not evidence of the value either of the property or the stock. It does not purport to give an estimate of the value of either. It is apparent that it was not within the scope or purpose of the report to declare upon the actual values of the various items of property owned by the corporation, and it does not do so. It is also apparent that the sum deduced from such reports as book value are purely arbitrary, and have no reference to actual value. This can be seen at once by considering that the actual value of the stock would necessarily rise or fall with changes in the actual value of the property of the corporation, but the book value would not change. It would remain fixed and entirely unresponsive to conditions rendering the assets of the bank highly valuable or entirely worthless. * * * Whether the report was admissible for any purpose we need not discuss or determine. It is sufficient to say that it did not furnish evidence of the value of the assets, or data from which the actual value of the stock could be deduced."

[5] But plaintiff contends that the ruling of the court excluding the evidence offered by defendant was nonprejudicial if erroneous, because, under the evidence received, the greatest possible

value of the stock was not to exceed about $130 per share, and in giving a verdict for plaintiff of only $800 the jury valued the stock at $375 a share, an amount so clearly beyond all possible value that such stock could have had that, even with all the testimony sought to be introduced, no such value could have been established. We agree with plaintiff. In the light of all the evidence received tending to show the status of the business of the insurance company during the years immeditely preceding December 20, 1911, such evidence being in part letters written by defendant, it is impossible to conceive that the stock of this company could have had a value much, if any, in excess of its par value, $100 per share. We are of the opinion that, if the witnesses had been allowed to advance opinions as to the value of such stock—basing such opinions on the report and all matters proper to be considered in connection therewith—and such witnesses had put such value at anywhere near $375 a share, the trial court would have been justified, of its own motion, in setting aside any verdict which showed that the jury accepted such valuation as correct.

[6] Was plaintiff entitled to a directed verdict? The motion for a directed verdict was based upon the ground "that the defendant has not proven any facts sufficient to constitute a defense," but plaintiff, instead of asking the court to direct the jury to bring in a verdict in a fixed amount, asked the court to direct the jury to fix the amount of the verdict by "taking the highest value of stock shown by the evidence, to-wit, the statement made by the insurance company to the department of insurance." Unless the "highest value" of this stock was so clear and certain under the evidence that there could be only one conclusion as to the amount so that, by deducting such value from the agreed purchase price, the court could properly determine and direct the amount of the verdict to be rendered, a motion to direct a verdict was improper; plaintiff's proper procedure being to move that the evidence touching the question of fraud be all stricken out, or that such issue of fraud be taken from the jury, and there be submitted to the jury the sole question of the amount plaintiff should recover. Inasmuch as it is clear that different minds might reach different conclusions as to the "highest value" shown by said "statement" —even conceding the same to be competent evidence as to the

value of the stock—the trial court could not have properly directed a verdict.

Long after the trial closed and the jury had been discharged, plaintiff asked to have the verdict amended so as to grant plaintiff a recovery in the sum of $2,250 instead of $800. Defendant questions the correctness of the method by which plaintiff sought to attack the justness of the verdict. We do not deem it necessary to consider whether, if the amount for which the verdict should have been rendered was certain, such a motion would lie. Suffice it to say that, for reasons already stated, the highest value of said stock—even basing the same on the "statement"—is open to dispute, and was therefore a question for the jury.

[7] Plaintiff did ask that all the evidence bearing upon the issue of fraud be taken from the jury, and has assigned as error the court's refusal to strike out such evidence and to submit the cause to the jury on the sole question of amount of damages to which plaintiff was entitled. Plaintiff concedes that, inasmuch as the verdict resolved the issue of fraud in his favor, it would, at first thought, seem that the ruling of the court, even if error, was without prejudice. He urges, however, that, 'in view of the smallness of the verdict—which he insists, and we believe, is excessively small under the evidence received, provided he was entitled to recover at all—one cannot help but conclude that leaving with the jury the two questions of fraud and amount of damages led the jury to give the plaintiff a smaller verdict than it would have given if there had been left to it but the one question of amount of damages. Did the court err in submitting the question of fraud to the jury? If it did not, then we need not consider the claim of prejudice; if it did, then certain errors assigned by defendant need no consideration.

To a proper consideration of this question a clear understanding of defendant's answer and of the matter testified to by defendant is necessary. Concisely stated, the answer alleged that defendant, being desirous of obtaining purchasers for a certain increase of stock of the insurance company, had offered to enter into written contracts with certain of such purchasers, guaranteeing a dividend on such stock, provided such purchasers would agree in writing to turn over and deliver to defendant all dividends in excess of 10 per cent. and to give defendant the privilege at any

time of repurchasing such stock; that some of the purchasers accepted such offer and entered into such written agreements; that plaintiff failed and declined to enter into such an agreement, and no agreement, verbal or written, was entered into in relation to such stock prior to this agreement sued on; that, at about the date of the contract sued on, the parties hereto met in connection with another transaction; that at that time plaintiff "represented to this defendant that there had been an agreement between the plaintiff and the defendant at the time of the issuance and delivery of the capital stock to the plaintiff, whereby this defendant had agreed with the plaintiff to guarantee to the plaintiff 6 per cent. per annum income upon his said investment"; that defendant could not remember of any such agreement; that, owing to the extremely confidential relations between these parties, defendant was in the habit of and did then absolutely rely upon the representations made by plaintiff, and "believed and understood that this defendant had, either by correspondence between the plaintiff and the defendant or otherwise, made such * * * agreement * * * * and * * * that the plaintiff was one of the persons with whom defendant had made such contract." There were allegations that the representation was false, and that plaintiff knew defendant relied upon it, as well as an allegation to the effect that plaintiff willfully took advantage of the extremely confidential relations existing between them. From the evidence received, it appears that, in the year 1906, it was found advisable, if not necessary, to increase the capital stock of the insurance company, but that, in order to meet losses for which the company was liable under its existing policies, such stock had to be sold at above par, as the excess above par received for such stock could alone be used in payment of such losses. Defendant was a heavy stockholder and president of the company. On December 20, 1906, he solicited plaintiff, who was not then a stockholder, to invest in this stock, and plaintiff invested $3,500 therein. When soliciting plaintiff to purchase such stock, defendant offered, if plaintiff purchased such stock, to enter into a contract with plaintiff in relation to such stock. The exact nature of this offer, whether in the nature of a guaranty of dividends or agreement to repurchase the stock, is disputed. Plaintiff testified that:

"He (meaning defendant) says, 'If you will take this stock
I will return the money you pay me with 6 per cent. interest from
this time if you are dissatisfied with the stock;'" that "I told him
that was all right, that I would rely upon his statement, and that
I would take the stock, and I did take it."

Defendant testified that: In the fore part of October, 1909, he
and plaintiff met at defendant's office in connection with another
business matter; that, as plaintiff was about to leave he said,
"About that matter between us of the purchase of my stock;" that
in answer he said, "Did I agree to buy your stock?" That plain-
tiff answered, "Yes." That, owing to the very confidential rela-
tions existing between them, he never thought of doubting plain-
tiff's word. That he hestitated a bit, not wanting to buy it then,
and plaintiff said "Any time later." That that was about all there
was to it. That later he received a letter from plaintiff, in which
plaintiff wrote:

"You said you would be willing to give me a guaranty to
use in case anything happened to you.  *  *  *  I am send-
ing you one to sign if you wish.  *  *  *"

That the instrument inclosed with such letter was not in proper
form. That he prepared and sent to plaintiff the contract sued on.
That in entering into such contract he relied upon the above oral
statement of plaintiff. That at the time he was soliciting per-
stons to buy stock in 1906 he had entered into contract with some
purchasers, whereby he had guaranteed to them certain dividends
on that stock for certain years, they contracting to give him all
excess of dividends, if any, with privilege of repurchasing such
stock. That he relied upon plaintiff's false statement. That after-
wards, upon looking over the old correspondence between himself
and plaintiff, he discovered the falsity of plaintiff's statement. That
he then was able to recall just what took place at the time plain-
tiff purchased his stock; that the true facts were that he offered to
enter into a contract with plaintiff such as he had entered into
with others, but that plaintiff refused.

We deem it important to note that defendant did not claim
to have ever forgotten the nature of the contracts entered into
with the other purchasers; neither did he claim that plaintiff's
representation led him to believe that he had agreed to repur-
chase such stock—but upon the other hand he swore that such

representation led him to believe that he had entered into the same agreement with plaintiff that he had with the other pur-chasers—an entirely different agreement than one obligating him to purchase the stock. Introductory to the contract proper, and apparently stating the reasons why defendant entered into such contract, the contract recited that, at the time of the original purchase of his stock:

"Sherman agreed with   *   *   *   Tuthill to guarantee to party of the first part 6 per cent. interest on his investment." Moreover, in the letter in which defendant sent the contract to plaintiff, he stated as a reason for not signing the form of con-tract prepared by plaintiff:

"I think   *   *   *   that what I return   *   *   *   would con-tain more information for others who might be called upon to settle the matter for us."

While from the above one might conclude that defendant en-tered into the contract under the mistaken belief that he had formerly made the same contract with plaintiff that he had with others; and while, if plaintiff had represented to him, as alleged in the answer, that he "had agreed with the plaintiff to guarantee to the plaintiff 6 per cent. per annum income upon his invest-ment," one could find from such representation something which would naturally, owing to defendant's confidence in plaintiff, lead to such mistake, we are unable to find in the testimony of defend-ant anything to establish the only representation pleaded by defendant; nor can we find, in the representation by plaintiff that defendant had agreed to repurchase the stock, even if such repre-sentation had been the one alleged, anything that would indicate any intent on the part of plaintiff to lead defendant to believe that plaintiff had accepted the offer which defendant made him back in 1906. Common sense would certainly lead plaintiff, if he remembered what actually occurred between these parties and it was as claimed by defendant, and if he was desirous of deceiv-ing defendant and getting him to enter into a contract, to have made some such representation as the one pleaded, and not such an one as defendant swore was made. The most one could possibly conclude, under all the evidence, construing it as favor-ably as one could for defendant, is that, if plaintiff's representa-tion was false, it was made because his memory was at fault, and

not because he intended to deceive. In other words, construing
the evidence as reasonable men guided by human experience, the
most we could say is that there was evidence from which the jury
might have said that the contract sued upon was founded upon
mutual mistake. The trial court erred in not taking the question
of fraud from the jury.

Was such error prejudicial? Something caused the jury
to give the plaintiff a verdict of only $800 when, under the evi-
dence received, he was clearly entitled to some amount far in
excess of the $800. What led the jury, to overlook the evidence
and the instructions of the court on the question of amount of
damages? We must presume that the jury intended to fairly
consider this case. We are unable to explain their verdict, except
upon the ground that it was affected by the fact that they allowed
some doubts as to the existence of the defense pleaded to influence
their action in determining the amount of their verdict.

[8] The trial court refused defendant's request for an instruc-
tion that the jury should find for defendant if it found from
the evidence that both parties entered into the contract laboring
under a mistaken belief that there had been an agreement entered
into at the time plaintiff purchased the stock. The court did not
err in refusing such instruction; no such defense was pleaded;
no amendment of pleading to conform to proof was sought; such
defense is inconsistent with the position taken by defendant
throughout the trial.

Defendant contends that the trial court erred in both giving
and refusing instructions relating to the elements of that fraud or
deceit which renders an apparent consent to a contract not a legal
consent. As there probably will be another trial of this cause,
we might feel in duty bound to consider the questions so raised
to the end that the trial court be guided aright upon such further
trial, if it were not for the fact that, in the light of defendant's
sworn testimony, we cannot conceive how he can longer urge his
present defense.

We are therefore of the opinion that the trial court erred in
its rulings excluding evidence offered by defendant, and in its
ruling submitting the question of fraud to the jury; that, in the
light of the verdict, the first of these rulings was nonprejudicial
and the other prejudicial.

The judgment and the order denying a new trial upon plaintiff's motion are reversed; the order granting plaintiff leave to amend modified as above noted; and neither party is allowed costs.